IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| Sherecia Willis, Individually and as Next Friend, Parent and Natural Guardian of Minor Child, CW<br><br>Plaintiffs,<br><br>Vs.<br><br>United States of America,<br><br>Defendant. | Civil File No. _____ |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs Sherecia Willis individually, and CW, minor child, by and through his parent and natural guardian, Sherecia Willis, and files this Complaint for Damages in the above-captioned matter and shows unto the Court the following:

### PARTIES JURISDICTION AND VENUE

1. Plaintiff, CW, is a military dependent minor child and his parent and natural guardian is Plaintiff Sherecia Willis.

2. Plaintiff, CW, temporarily resides in Columbia County, State of Georgia; Plaintiff's mother and legal guardian Sherecia Willis is a resident of Detroit, Michigan who temporarily resides in Korea, pursuant to military orders.

3. The United States of America is a proper Defendant as the tortious acts and omissions occurred from health care services and treatment provided from medical personnel

1

employed by the United States of America, and the Plaintiffs claims are within the Jurisdiction of this Honorable Court.

4. Subject matter jurisdiction over the United States of America is proper under 28 U.S.C. §§1346 (b), 2401, 2412, 2671-2680.

5. Defendant provided medical care to infant CW in Richmond County, Georgia, January and February 2016.

6. Venue is proper under 28 U.S.C. §1402 (b) as the tortious acts and omissions occurred in the Southern District of Georgia.

7. Defendant operates Dwight David Eisenhower Hospital Army Medical Center (Eisenhower) located at Fort Gordon Georgia and, under the Federal Tort Claims Act 28 U.S.C. 1346 (b), has assumed responsibility for negligent acts of the staff of that hospital in the scope of their employment for the government.

8. Eisenhower contracts with Augusta Hospital, LLC, doing business as Trinity Hospital of Augusta, to deliver Fort Gordon babies.

9. Babies of active duty military, military dependents and military retirees in the Augusta/ Fort Gordon area are delivered at Trinity Hospital of Augusta by Fort Gordon United States Army staff physicians.

10. Under the contract employees of the United States who deliver babies at Trinity Hospital are acting within the scope of their employment with the Defendant, United States.

11. Administrative claims have been presented and left without action by the US Army for over six months, permitting suit to be instituted without final action on the claims, a copies of said claims (Standard Form SF 95) and acknowledgement is attached as Exhibit 1 to this complaint.

## COUNT I

12. The allegations set forth in Paragraphs 1 through 11 are incorporated by reference as if stated fully herein.

13. Attached hereto, as Exhibit 2 to this Complaint, is the Expert Affidavit and CV of Dr. Scott A. Sullivan, who is qualified as an expert witness on the medical issues raised in this Complaint. Said Affidavit specifies at least one negligent act or omission on the Defendant's part and the factual basis for such negligent act or omission that caused injury to CW.

14. Plaintiff, CW, during the time of the matters identified in this Complaint was under the care and treatment of medical staff, including the Army medical staff physicians, who are employed by the United States of America.

15. The United States of America and the Army Medical Staff physician, Dr. Martin Jefferies had a duty of care to Plaintiff, CW.

16. Defendant, United States of America and the Army medical Staff physician, Dr. Jefferies had a fiduciary duty to prevent exposing Plaintiff, CW, to unreasonable risk of harm pursuant to the existence of hospital staff/ physician- patient relationship for the purposes of Plaintiff CW's care and treatment.

17. Defendant provided the care to CW's mother during her pregnancy, which was uneventful.

18. CW prior to labor and delivery was a normal full term, 40- week fully developed infant.

19. There were no indications that CW had severe fetal acidosis or hypoxic-ischemic encephalopathy (HIE) upon admission to Trinity Hospital on January 31, 2016.
20. There were indications of abnormal fetal heart monitoring leading up to the delivery of CW.
21. By 01:40 AM on February 1, 2016 the electronic heart monitoring indicated an acidotic fetus. CW was born at 2:09 AM.
22. During the course of medical treatment of CW, Defendant United States of America and Dr. Jefferies, who acted as agent of the Defendant, failed to exercise the degree of skill and care required by the medical profession in general, under similar conditions and like circumstances, including, but not limited to, the matters more specifically outlined in the expert's Affidavit and CV, hereto as Exhibit 2.
23. Defendant's physician, Dr. Jefferies, negligently failed to appreciate the significance or timely act in response to indications of fetal distress in the labor and delivery of CW.
24. Defendant through Dr. Jefferies negligently deviated from the standard of care owed to the Plaintiff CW during labor and delivery by failing to make earlier interventions on January 31, 2016 to February 1, 2016. .
25. Standards of obstetric care require earlier intervention in the labor and delivery process.
26. CW suffered severe fetal distress in utero in the hour prior to birth.
27. CW was born with Apgar scores of: 1,3,4, and 6 at 1,5,10, and 15 minutes respectively.
28. CW was born with a severely acidotic blood gas of 6.95.
29. As a result of deviations from the standard of care, CW required extensive resuscitation, required an extended stay in the NICU, suffered neonatal seizures and a year later continues to suffer from severe developmental delays.

30. Earlier intervention in the labor and delivery process would have greatly reduced or prevented subsequent profound injuries to the Plaintiff, including but not limited to, severe brain damage due to the complications of severe fetal acidosis and hypoxic-ischemic encephalopathy (HIE).

31. As a result of the negligent failure to timely intervene and provide proper care, Plaintiff, CW is entitled to damages, including but not limited to, compensation for his past, present, and future pain and suffering, past, present, and future medical expenses, healthcare costs associated with rehabilitation, therapy, counseling, and specialized medical equipment, loss of enjoyment and companionship, future lost wages, and disfigurement.

32. The injuries sustained by infant CW are not derivative from any injury to Sherecia Willis.

33. Sherecia Willis sustained no physical injury from the effects of the negligent labor and delivery or CW's birth.

34. Defendant negligently caused emotional distress, pecuniary loss, and loss of services of Plaintiff CW to Plaintiff Sherecia Willis.

35. Plaintiff, Sherecia Willis, derivatively claims, due to the injuries to Plaintiff CW, and is entitled to damages for loss of services of CW and emotional distress, inter alia, by experiencing and seeing her new born baby not breathing and being subjected to emergency efforts to resuscitate CW

## Count II

36. The allegations set forth in Paragraphs 1 through 35 are incorporated by reference as if stated fully herein.

37. Dr. Earwood was present for the birth of CW.

38. Dr. Earwood, another staff physician of Defendant, provided medical care and treatment to Plaintiff CW.

39. During the course of medical treatment of Plaintiff CW, Defendant United States of America and Dr. Earwood, who acted as agent of the Defendant, failed to exercise the degree of skill and care required by the medical profession in general, under similar conditions and like circumstances.

40. Dr. Earwood owed a duty of care to Plaintiff CW.

41. Dr. Earwood spent over 15 minutes resuscitating CW after birth.

42. Dr. Earwood negligently failed to appreciate the significance and severity of CW's condition at birth and failed to timely act in referring CW to a higher level NICU where among other things therapeutic hypothermia treatment was available.

43. Timely therapeutic hypothermia treatment is the standard for treating severe HIE, neonatal brain damage, in newborns.

44. Dr. Earwood was or should have been aware , based on CW's APGARs of 1 at one minute, 3 at five minutes, and 4 at 10 minutes after birth, arterial cord blood gas of 6.95, and the lengthy resuscitation process of CW after a difficult birth that CW needed more specialized treatment than what was available at Trinity Hospital's NICU.

45. Trinity Hospital has a level II NICU.

46. Trinity did not have the ability to provide therapeutic hypothermia treatment for newborns.

47. Georgia Regents University, another Augusta, GA hospital, offered a higher level NICU center than that available at Trinity Hospital, and could provide therapeutic hypothermia treatment for HIE damaged babies.

5. That Plaintiffs have such other and further relief as deemed just and proper by this Honorable Court.

This 2nd day of February, 2017.

Respectfully submitted,

**s/Chuck R. Pardue, Esq**.
CHUCK R. PARDUE
Georgia Bar No. 561212
Attorney for the Plaintiffs
Pardue and Associates, P.C.
211 B Bobby Jones Expressway
Martinez Georgia 30907
706-823-2000 (telephone)
706-722-0149 (fax)
chuckpardue@gmail.com

**s/Shellana Welch, Esq.**
SHELLANA WELCH
Georgia Bar No. 484058
Attorney for the Plaintiffs
Pardue and Associates, P.C.
211 B Bobby Jones Expressway
Martinez Georgia 30907
706-823-2000 (telephone)
706-722-0149 (fax)