**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| SHERECIA WILLIS, Individually and as | ) | |
| Next Friend, Parent and Natural | ) | |
| Guardian of Minor Child, CW, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CV117-015 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| First Defendant, | ) | |
| | ) | |
| VENKATESAN GORANTLA, M.D. | ) | |
| Second Defendant, | ) | |
| | ) | |
| AUGUSTA HOSPITAL, LLC (DE) d/b/a | ) | |
| TRINITY HOSPITAL OF AUGUSTA, | ) | |
| Third Defendant, | ) | |
| | ) | |
| AUGUSTA PHYSICIAN SERVICES, LLC, | ) | |
| Fourth Defendant. | ) | |

## DEFENDANT UNITED STATES' OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF TOM DAWSON/TD&P CONSULTING, INC.

COMES NOW, the United States, through the United States Attorney Bobby L. Christine, and the undersigned Assistant United States Attorneys, and files this opposition to Plaintiff's Motion to Exclude the Testimony of Tom Dawson/TD&P Consulting ("Mr. Dawson"). [Doc. 187].

Plaintiff moves to exclude the testimony of Mr. Dawson based on three incorrect arguments: 1) Georgia's collateral source rule renders his testimony inadmissible; 2) any probative value of Mr. Dawson's opinions is outweighed by the risk of prejudice to Plaintiff if heard by a jury; and 3) Mr. Dawson's testimony is

1

inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

As detailed below, Mr. Dawson's testimony should be admitted as the Plaintiff's assertions are supported by neither law nor fact. First, Mr. Dawson's expert testimony is not precluded by the collateral source rule, as the government-provided, taxpayer-funded medical benefits provided to minor CW[1] for the remainder of his life are not collateral; they are a vested benefit which must be included in the damage computation to prevent the Plaintiff's double recovery. Second, the analysis provided by Mr. Dawson of these benefits, though prejudicial to the Plaintiff's desired recovery, are not *unfairly* prejudicial and do not warrant exclusion from the trier of fact, as an analysis of CW's CHAMPVA benefits will assist the court in determining damages. Finally, Mr. Dawson's testimony is admissible under both Georgia and Federal Law, as his analysis meets the *Daubert* standard for reliability and relevance.

## BACKGROUND FACTS

The government filed Mr. Dawson's expert report on May 21, 2018. [Docs. 124, 124-1, 124-2, 124-3, 124-4]. Mr. Dawson is the CEO of TD&P, which is an applied health policy firm that provides research and policy analysis on healthcare issues. [Doc. 124-2]. Included in the expert report was a summary of Mr. Dawson's opinion, Mr. Dawson's CV, the fee schedule of TD&P, and the previous testimony of Mr. Dawson. *Id.* Mr. Dawson's analysis included an extensive and thorough 214-page

---

[1] The undersigned will refer to the minor child in this pleading as CW.

report outlining potential healthcare coverage options for CW's future care and also opined on the reasonable value of such coverage options.

In laying out his opinion, Mr. Dawson's report focused initially and broadly on 17 questions concerning the types of insurance and programs for which CW would be eligible based on his status and disability.  *Id.*, p. 1-34.  The report analyzed four ways in which CW would be able to address his healthcare needs:  1) maintain coverage under TRICARE; 2) maintain coverage under TRICARE coupled with participating in Georgia Medicaid; 3) maintain coverage under TRICARE coupled with picking up a qualified health plan in Georgia's exchange; or 4) maintain coverage under TRICARE coupled with participating in Medicaid and taking up a qualified health plan in Georgia's exchange.  *Id.*, p. 34.  The report went on to analyze coverage options under the applicable scenarios and evaluates these options using the Current Procedural Terminology codes (CPT) and Healthcare Common Procedure Coding System (HCPCS) codes.  Furthermore, the report examines coverage options based on recommendations of what services and care would be needed by both Plaintiff's and Defendant's life care planners.  *Id.*

At the time that this initial report was filed, CW was covered by TRICARE.[2] In late March, 2019, the undersigned learned that CW was no longer covered by TRICARE by virtue of Plaintiff being medically discharged from the Army.  CW is now and will be covered for life by CHAMPVA by virtue of Plaintiff receiving a 100

---

[2]   TRICARE is also sometimes referred to as CHAMPUS.

3

percent permanent and total determination of disability.[3]  This rating ensures that CW will have coverage under CHAMPVA for his entire life.  *See* **Government Exhibit 1** (VA ratings decision for Sherecia Willis).  CHAMPVA is similar to TRICARE in that it is insurance provided by the government that the participants do not have to pay anything into the program to receive.  *See* UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, http://www.va.gov/health-care/family-caregiver-benefits/champva.com; *see also* 38 C.F.R. § 17.271 (2019).

In response to the change to CHAMPVA coverage for CW, TD&P prepared an amended report based on future CHAMPVA coverage for CW (substituting TRICARE coverage for CHAMPVA coverage).  The amended report was produced to counsel for Plaintiff on the day that it was completed, and has been filed into the record.  [Docs. 211 (Order allowing the Government to file Amended Report of Mr.  Dawson); 212 (Amended Report of Tom Dawson dated May 7, 2019 discussing CHAMPVA coverage)].[4]

At the time that the initial motion to exclude Mr. Dawson's testimony was filed on May 7, 2019, (Doc. 187), it is important to note that Mr. Dawson had not been deposed.  Mr. Dawson has now testified at his deposition.  The first part of his deposition took place on June 12, 2019.  *See* **Government Exhibit 2**.  The continued

---

[3]   The Civilian Health and Medical Program of the Department of Veterans Affairs (CHAMPVA) provides coverage to spouses and dependents of qualifying veterans.

[4]    The undersigned will refer to the Amended Report of Mr. Dawson discussing CHAMPVA coverage in the remainder of this pleading.  [Doc. 212].

deposition of Mr. Dawson took place on August 19, 2019.  *See* **Government Exhibit 3**.

Mr. Dawson's testimony should be admitted for three principal reasons.  First, CW's CHAMPVA benefits are not excluded under Georgia's collateral source rule.  Second, the probative value of Mr. Dawson's testimony regarding damages is not unfairly prejudicial and, further, this case will be tried by a federal judge as to the United States.  Third, Mr. Dawson is qualified under Georgia state law of evidence, O.C.G.A. § 24-7-702, Federal Rule of Evidence (FRE) 702, and his qualifications and opinion meet the requisite *Daubert* standard, as discussed below.

## ARGUMENT

### I. TRICARE and/or CHAMPVA Benefits Are Not Excluded under the Georgia Collateral Source Rule, thus, Mr. Dawson's Testimony is Admissible.

#### A. Georgia Collateral Source Rule

In Georgia, the collateral source rule "bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a <u>third party</u> and taking any credit toward the defendant's liability and damages for such payments." *Kelley v. Purcell*, 301 Ga. App. 88, 686 S.E.2d 879, 882 (2009) (quoting *Hoeflick v. Bradley*, 282 Ga. App. 123, 637 S.E.2d 832 (2006)) (emphasis added).  Accordingly, the rule "permits an injured party to recover damages from a defendant notwithstanding that the plaintiff received compensation [for his or her injuries] from <u>other sources</u>." *Bennett v. Haley*, 132 Ga. App. 512, 208 S.E.2d 302, 310 (1974) (emphasis added).  The underlying rationale for this rule is that "a tortfeasor is not

allowed to benefit by its wrongful conduct or to mitigate its liability by collateral sources provided by others." *Kelley*, 686 S.E.2d at 882. Nevertheless, "there may be another issue in a case to which evidence of collateral benefits is material." *Polito v. Holland*, 258 Ga. 54, 365 S.E.2d 273, 274 (1988). "It is in the trial court's discretion to weigh the effect of the collateral source evidence before ruling on its admissibility." *See Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1372–73 (S.D. Ga. 2016), *objections overruled*, CV 215-81, 2016 WL 6542717 (S.D. Ga. Nov. 3, 2016).

### B. Payment by the U.S. Government is Not a Collateral Source.

Plaintiff incorrectly argues that Mr. Dawson's opinions are inadmissible, as Georgia's collateral source rule prohibits Mr. Dawson's testimony. Rather, it is well settled that payments made by the United States Government are not collateral. For a source to be collateral, it must be in addition to or independent from the tortfeasor, and it must provide payment or benefit to the injured party. *See generally*, Restatement 2d of Torts § 9210A cmt. b. The plain language of the CHAMPVA statute makes clear that the United States' payment of this benefit is not collateral. *See Hester v. United States*, 2011 WL 6181913 (M.D. Fla. 2011) (noting that, "VA benefits come from the same source of payment as damages award (*i.e.* both come from the government), and thus, the Court does not consider the VA benefits to be collateral source payments.) *Id.* at *3; *see also Holle v. McDonald*, 28 Vet. App. 112, 116 (2016) (noting that, pursuant to 38 U.S.C. § 1781, the Department of Veterans Affairs (VA) is authorized to provide medical care for survivors and dependents of certain veterans through the CHAMPVA program). In light of both this well-settled

law and a common sense reading of the word "collateral", CHAMPVA is not a collateral source.  These general appropriations from the treasury of the United States cannot be viewed as "a special fund that is separate and distinct from general government revenues."  *Mays v. United States*, 806 F.2d 976, 977 (10th Cir. 1986) (citing *Berg v. United States*, 806 F.2d 978, 985 (10th Cir. 1986)).

In this case, the government, both now and continuing indefinitely into the future, provides a direct benefit to CW. Mr. Dawson's opinion is centered on what CHAMPVA will provide as to CW's future care, and explores supplemental options in addition to the main CHAMPVA coverage.  Although he also talks about programs such as Medicaid or the IDEA[5], the majority of his opinion discusses the government funded healthcare that CW will have for the rest of his life.  This payment is not collateral, but direct from the alleged tortfeasor.  To that point, the Middle District of Georgia has held that an insurance benefit provided solely by the United States, as a result of no monetary contributions of the plaintiff, does not constitute a collateral source.  *MacDonald v. United States*, 900 F. Supp. 483, 486-487 (M.D. Ga. 1995).

C.    **As CHAMPVA is Not a Collateral Source, Government-Provided Benefits to CW Should Offset Any Damages.**

Mr. Dawson's testimony as to the future coverage of CW's healthcare is vital to determining damages in this case and to preventing the Plaintiff's double recovery at taxpayer expense.  *See Brooks v. United States*, 337 U.S. 49 (1949) (noting that the

---

[5] Individuals with Disabilities education Act is a federal law codified at 20 U.S.C. § 1400 *et seq.*

Court "sees no indication that Congress meant the United States to pay twice for the same injury"); *Overton v. United States,* 619 F.2d 1299 (8th Cir. 1980) (holding that Plaintiff's FTCA damages award must be reduced by any amounts received through Medicare)*; see also Dempsey v. United States,* 32 F.3d 1490 (11th Cir. 1994) (affirming set-off for CHAMPUS benefits to cover future costs based on sufficiency of government's evidence); *Kennedy v. United States*, 750 F. Supp. 206, 213 n. 10 (W.D. La. 1990) (permitting set-off for CHAMPUS payments of future medical costs based upon evidence that past CHAMPUS payments equaled or exceeded 75 percent of plaintiff's past medical treatment).

"Setoff of awards received under the Federal Tort Claims Act against government benefits received under other statutes is necessary to avoid the governments 'double payment for the same injury.'" *Shaw v. U.S.A. Veterans Admin.*, 711 F.2d 156, 157-158 (11th Cir. 1983) (citing *Kubrick v. United States*, 581 F.2d 1092, 1098 (4th Cir. 1978), rev'd on other grounds, 444 U.S. 111, (1979); *see also Foxworth v. United States*, 2013 U.S. Dist. LEXIS 149012 (E.D. Va. 2013) (prohibiting the injured party from a blanket recovery of CHAMPVA benefits for out of pocket expenses and co-payments as part of cost sharing under 38 C.F.R. § 17.274). As the Supreme Court stated in *Brooks*, "[i]t would seem incongruous, at first glance, if the United States should have to pay in tort for . . . expenses it had already paid. . . ." *Brooks*, 337 U.S. 49 at 54.  The United States has already paid and will continue to pay expenses for CW; this court should not permit Plaintiff a double recovery.

8

**D.      Other Courts Have Not Addressed the Proposed Testimony Offered by Mr. Dawson in this Case, and Have Not Included the United States as a Defendant.**

Plaintiff's focus on evidentiary holdings precluding Mr. Dawson's testimony on previous, dissimilar cases is irrelevant, as testimony regarding CHAMPVA is both relevant, reliable, and material to the case at bar.  Plaintiff seeks to preclude Mr. Dawson's testimony by noting that Mr. Dawson is always retained by the defense, was previously excluded from giving testimony in three cases, and has never testified previously in federal court.  [Doc. 187, p. 2].  However, this line of argument grossly oversimplifies the nature of Mr. Dawson's testimony, both previous and current.

Plaintiff relies on an evidentiary ruling in *Rinehart v. GFI Management Services, Inc.*, CAFN 1:13-cv-03304-ELR (N.D. Ga.).  *Rinehart* is distinguishable because it focuses on possible, future benefits under the Affordable Care Act (ACA).  Here CW is covered by CHAMPVA which is not a collateral source. *Id.; see also Carmona v. Multicare Health Systems, Inc.*, CAFN 15-2-12042-5 KNT (Super. Ct. of King Cty., Wash.).  Plaintiff cannot show that Mr. Dawson was excluded as a witness from testifying as to CHAMPVA, and whether or not CHAMP VA is a collateral source.  The other rulings cited by Plaintiff, therefore, are inapposite.

At his deposition, Mr. Dawson was asked to provide a list of cases where he was excluded from testifying.  *See* Government Exhibit 2, p. 42:1-18; Government Exhibit 3, p. 64: 23- 67:22; **Government Exhibit 4** (Mr. Dawson's Exclusion List).  None of the cases where Mr. Dawson was excluded on the basis of a collateral source ruling include a case where he was expert for the United States.

## II.   The Probative Value of Mr. Dawson's Testimony Concerning Damages is Not Unfairly Prejudicial.

At the outset, one important distinction that Plaintiff fails to recognize when arguing the prejudicial effect of Mr. Dawson's testimony is that his testimony will not be heard by a jury as to Defendant United States, but by a federal judge.  *See* 28 U.S.C. § 2402 (2019).  The trier of fact is the Court. *See* 32 C.F.R. § 750.32 (2019); 28 U.S.C. §§ 2671 *et seq*.  Certainly, the Court is well-positioned to evaluate Mr. Dawson's testimony at trial and make determinations about the reliability or credibility of the witness.[6]

Trier of fact aside, Mr. Dawson's testimony on future benefits is necessary in order to make an informed determination as to an appropriate damage award.  Of

---

[6]   The Eleventh Circuit has held,"[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346, (1981); *see also Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A 1981) (indicating that "Rule 403 has no logical application to bench trials" because in a bench trial, the judge can exclude from his mind improper inferences drawn from inadmissible evidence in reaching a decision)." *Jemison v. Simmons*, 518 F. App'x 882, 888 n.6 (11th Cir. 2013); *see also Woods v. United States*, 200 F. App'x 848, 853 (11th Cir. 2006) (The Court pointed out, "It is also worth repeating that this was a bench trial. As the former Fifth Circuit stated in *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A Jan.1981), the part of Rule 403 that authorizes exclusion of evidence because of its unfair prejudicial impact 'has no logical application to bench trials.... Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision.'").

course, any testimony on prospective damages carries with it an inherent amount of uncertainty.  As the Fourth Circuit stated on remand from the Supreme Court in *United States v. Brooks*, 176 F.2d 482 (4th Cir. 1949);

> We recognize that prospective disability payments are uncertain in that the government may withdraw or decrease them at any time, but the uncertainty here is no greater than that involved in many other matters affecting damages in personal injury cases; and the trial court must deal with it as it deals with other uncertainties by using its best judgment after all the facts and circumstances of the case have been taken into consideration.

*Id.* at 484.  Drawing a similar conclusion in an analogous Federal Employer's Liability Act (FELA) case, the Northern District of Georgia held that although the law concerning the Affordable Care Act (ACA) may change, this did not render the calculated benefits from ACA coverage improper.  *Cephus v. CSX Transp., Inc.*, 2016 U.S. Dist. LEXIS 194016, at *8 (N.D. Ga. Dec. 6, 2016); *see also Brewington v. United States*, 2015 U.S. Dist. LEXIS 97720, at *6 (C.D. Ca. Jul. 24, 2015).

Contrary to Plaintiff's assertions, the benefits provided by CHAMPVA are vested, and substantially decrease CW's out-of-pocket medical expenses.  Plaintiff presumes that the legal criteria for eligibility of collateral source coverage in accordance with the ACA will change during CW's life.  This is incorrect; ACA and CHAMPVA coverage are not synonymous.  Under the ACA, health insurance coverage is purchasable on the government sponsored "marketplace".  HEALTH CARE GOV, http://www.healthcare.gov/fees/plans-that-count-as-coverage.com.  By contrast, CHAMPVA coverage is a guaranteed government benefit for survivors and dependents of qualifying veterans.  *See* 38 U.S.C. § 1781 (2019).  Thus, the future of

ACA coverage has no bearing on the future distribution of CHAMPVA benefits.

Likewise, Plaintiff incorrectly characterizes Mr. Dawson's analysis of government-provided benefits, which potentially decrease the need for monetary damages, as collateral and unfairly prejudicial. [Doc. 187, p. 10]. Here, testimony on government benefits serves to show the government's contribution towards CW's past and, more importantly, future medical expenses.

To exclude the benefits of CW's CHAMPVA coverage, Plaintiff must establish that the probative value of government-provided, lifelong insurance is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the trier of fact, causing an undue delay or waste of time, or needlessly presenting cumulative evidence.   FED. R. EVID. 403. Plaintiff cannot meet this burden.   "The application of Rule 403 must be cautious and sparing excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *See United States v. Nowak*, 370 Fed.Appx.39 (11th Cir. 2010) (citing *United States v. Mills*, 704 F.2d, 1553, 1560 (11th Cir. 1983)).   This is not a case where prejudice substantially outweighs probative value of testimony.   CW's CHAMPVA benefits are relevant to the question of damages.   Therefore, if, as in *Cephus*, the court did not exclude testimony on ACA potential coverage, this court should similarly hold that testimony on CW's vested CHAMPVA coverage is permissible, as it assists the trier of fact in determining appropriate damages.

Mr. Dawson clearly explained in his deposition that even if the ACA is repealed, that would have no impact on CW's access to CHAMPVA, which is largely

an argument that Plaintiff relies on in moving to have Mr. Dawson's opinion excluded:

> Q.    If the ACA is repealed, how does that impact the qualified patient's access to CHAMPVA?
>
> A. If it's repealed, it won't impact their access and ability to participate in that plan.  Against, as I said, the preexisting conditions that they have under Georgia law, under any law, they will be able to certainly take up coverage through a qualified health plan as well as hold that CAHMPVA plan, which would further limit sort of any particular out of pocket expenses that they may experience.  So in my opinion that individual's access to coverage will not change or not be diminished, and in addition, to that they will continue to have access to coverage in the marketplace both under CHAMPVA and also in the private marketplace.

**Government Exhibit 3**, p. 70:24-71:14.

### III.    Mr. Dawson is Qualified under Georgia Law, FRE 702, and *Daubert*, as his Opinion is Reliable and Relevant.

#### A.    Requisite Standards

##### 1.    *Georgia State Law and Federal Rule of Evidence 702*

"In a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 601.  Here, Georgia state law mimics FRE 702.[7]  The Georgia Code requires the following of an expert witness in a civil action:

---

[7]  FRE 702: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge, will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

a) Except as provided in Code Section 22-1-14 and in subsection (g) of this Code section, the provisions of this Code section shall apply in all civil proceedings. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses.

b) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

O.C.G.A. § 24-7-702

Under Rule 702 and *Daubert*, district courts must act as "gatekeepers" and admit expert testimony only if it is both reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *Daubert*, 509 U.S. at 589). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (alterations and internal quotation marks omitted).

### 2.    *Daubert Standard for Reliability and Relevance*

The *Daubert* standard is based on the reliability of a witness. Per *Daubert*, an

---

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  Specifically, a court must consider whether:

> (1) [T]he expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589).  In *Kumho Tire*, the Supreme Court made it clear that expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one. *Kumho Tire Co., Ltd. v.* Carmichael, 526 U.S. 137, 156 (1999).  "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The "reliable" element requires that the testifying expert's opinion have "a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (citing *Daubert*, 509 U.S. at 592).  Because the exact factors that will govern the reliability of an expert opinion will depend on the expert's discipline and the opinion offered, "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony

15

is reliable." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 808 (11ᵗʰ Cir. 2017) (citing *Kuhmo Tire Co.*, 526 U.S. at 152; *see also Rink*, 400 F.3d at 1292 ("District courts have substantial discretion in deciding how to test an expert's reliability.").

### B.     Application of Standards to Mr. Dawson's Opinion

#### 1.     *Mr. Dawson is Qualified as an Expert Witness under Georgia State Law and Federal Rule of Evidence 702.*

Mr. Dawson satisfies the three criteria required to be an expert witness under Georgia state law and Federal Rule of Evidence 702.   Mr. Dawson satisfies the preliminary requirements of Rule 702, as demonstrated by his knowledge, skill, experience, training, and education received over a 29-year career working in the public and private sector on issues like Medicare, Medicaid, and the ACA. *See* Doc. 124-3, 124-4; *see also* **Government Exhibit 5** (updated CV of Mr. Dawson produced at deposition of August 19, 2019).   It is important to note that, contrary to what Plaintiff asserts, Georgia state law and Rule 702 do not require Mr. Dawson to have certain knowledge of the future to be reliable. Instead, this court looks to the three criteria in subsection (b) of Rule 702 to make that determination.

First, Mr. Dawson's testimony provides sufficient facts and data.   His testimony is supported by a 175-page report that comprehensively addresses the types of insurance programs for which CW is eligible. [Doc. 212, p. 3 (providing an executive summary for Mr. Dawson's opinion)].   This analysis is not based on speculation, but on the types of insurance or government benefits provided to CW.

Second, Mr. Dawson's testimony is the product of reliable principles and methods. Mr. Dawson's analysis is grounded in three principles:  1) the calculation should be independent of any one individual's experience of price, mode of health care payment, medical condition, or diagnosis; 2) the calculation should use objective and independently verifiable pricing and cost data derived from actual payments made by market defined payors *i.e.* public insurers, commercial insurers, and self-insured; and 3.) the calculation should use population data regarding the take up market defined modes of health care financing.  [Doc. 212, p. 16].  Mr. Dawson goes on to explain specifically the pricing methodology that he employed in coming up with his opinions in this matter.  *Id.*, p. 17.  Notably, the court's admissibility inquiry must focus not on whether the expert testimony is correct, but whether the proponent of the expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of methodologies or techniques applied.  *Allison*, 184 F.3d at 1312.

Finally, Mr. Dawson's testimony has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence. Mr. Dawson provided six ways for CW to satisfy his healthcare needs:  1) maintain coverage under CHAMPVA; 2) maintain coverage under CHAMPVA and take up a qualified health plan; 3) maintain coverage under CHAMPVA and take up Georgia Medicaid Medically Needy Program (Medicaid Pathway 1); 4) maintain coverage under CHAMPVA and take up Katie Beckett Medicaid Waiver Program (Medicaid Pathway 2); 5) maintain coverage under CHAMPVA, and take up the Georgia

Medicaid Medically Needy Program and the Katie Beckett Medicaid Waiver (Medicaid Pathway 3); or 6) maintain coverage under CHAMPVA, and take up a Qualified Heath Plan and Georgia Medicaid (Medicaid Pathway 1,2,or 3). [Doc. 212, p. 18]. Mr. Dawson's conclusions derive from the results of applying his principles and methodology to the facts of this case. Mr. Dawson's testimony sufficiently satisfies both O.C.G.A. § 24-7-702 and Federal Rule of Evidence 702.

### 2. *Mr. Dawson is Qualified as a Witness under the Daubert Standard.*

Under the three part *Daubert* test, Mr. Dawson's expert testimony qualifies as reliable and will assist the trier of fact to determine damages. First, Mr. Dawson is qualified to testify competently on the matter of future health coverage options and costs, as evidenced by his education and working experience. Plaintiff focuses exclusively on Mr. Dawson's law degree, but ignores his master's degree in Public Health from George Washington University, as well as his substantial knowledge on health care plans and regulations. [Doc. 124-2, p.1]. As CEO of TD&P Consulting Inc., he has access to and directly influences research and policy analysis on current health care issues. *Id.* Mr. Dawson's work with American Capitol Group and the House of Representatives Committee on Small Business gives Mr. Dawson insight into legislative and regulatory matters affecting health care policy and costs. *Id.* at 2.

Second, Mr. Dawson's methodology satisfies the *Daubert* standard for reliability. Mr. Dawson's testimony is based on an assessment of the reasonable

value of goods and services of all the payors in the market using a comparative pricing methodology.  [Doc. 212, p. 16].  This methodology incorporates codes that evaluate self-insured, public, and private payor reimbursement rates.  *Id*.  Reasonable value should be based on the average rates paid in the market by all payors. *Gaddy v. Terex Corp*, 2017 WL 3473872 (N.D. Ga. Jul. 21, 2017).

Plaintiff incorrectly asserts that Mr. Dawson's testimony on reasonable value is based on legal conclusions.  While Mr. Dawson is not an economist, the Government provides an economic evaluation through a life care plan written by economist Jerome S. Paige for CW. Doc [132-1].[8]  Mr. Paige's evaluation is based upon Mr. Dawson's analysis. *Id* at 3.  Mr. Paige uses the "net discount approach", which combines growth and discount rates in order to simplify calculations in measuring the present value of future costs and to insure there is consistency between selected growth rates.  *Id*. This methodology takes into account the various benefits offered to CW under CHAMPVA and projects their costs into the future, assisting the Court in understanding the appropriate damages in this case.

Third, Mr. Dawson's testimony assists this Court through the application of scientific and technical expertise to understand the evidence provided. Mr. Dawson's testimony provides clarity to his report and supporting appendices, which incorporate analysis from the Berens and Riddick Grisham report on qualified health care,

---

[8] Should Mr. Dawson's testimony not be excluded, the Government intends to supplement the report of Dr. Paige upon approval by the Court, based on the figures in Mr. Dawson's Amended Report, (Doc. 212), replacing the TRICARE figures with CHAMPVA figures.

Georgia Medicaid, and CHAMPVA plans.  *See* Doc. 212*,* App. A, B, C.  Applying his methodology, Mr. Dawson provides to this Court as evidence a range of six options that CW could feasibly use to meet his present and future medical needs. Furthermore, through Mr. Dawson's testimony, this Court will better understand the evidence provided to create a suitable damage award.

Contrary to Plaintiff's assertions, Mr. Dawson's testimony comports with Georgia state law, Federal Rule of Evidence 702, and meets the *Daubert* standard for reliability and relevance.  His testimony should be admitted.

## CONCLUSION

Based on the foregoing analysis, the United States requests that this court deny the Plaintiff's Motion to Exclude Testimony of Tom Dawson/TD&P Consulting Inc.

Respectfully submitted this 3rd day of September, 2019.

(signatures to follow).

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Shannon H. Statkus*
Shannon H. Statkus
Assistant United States Attorney
South Carolina Bar No. 70410
P.O. Box 2017
Augusta, Georgia 30903
Telephone: (706) 724-0517

*s/Jason W. Blanchard*
Jason W. Blanchard
Assistant United States Attorney
Georgia Bar No.  105620
P.O. Box 2017
Augusta, Georgia 30901
(706) 724-0517
**Counsels for Defendant**

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Shannon H. Heath
Shannon H. Statkus
Assistant United States Attorney